IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT G. OLVER, | ) | |
| CANDIE L. SPADJINSKE, and | ) | |
| DESHA L. MAYS, | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | Case No. 1:15-CV-00549-TWT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| KAPLAN, INC., KAPLAN HIGHER | ) | |
| EDUCATION, LLC, and IOWA | ) | |
| COLLEGE ACQUISITION, LLC | ) | |
| d/b/a KAPLAN UNIVERSITY, | ) | |
| Defendants. | | |

## **PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

ROBERT G. OLVER, CANDIE L. SPADJINSKE, and DESHA L. MAYS

("Plaintiffs"), individually and on behalf of all other persons similarly situated, bring

this First Amended Class Action Complaint and Demand for Jury Trial

("Complaint") against Defendants KAPLAN, INC. ("Kaplan"), KAPLAN HIGHER

EDUCATION, LLC ("KHE") and IOWA COLLEGE ACQUISITION, LLC d/b/a

KAPLAN UNIVERSITY ("Kaplan University") (collectively "Defendants"), to

stop Defendants' practice of making unsolicited telemarketing calls to the telephones

of consumers nationwide and to obtain redress for all persons injured by their

conduct.  Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorney.

## INTRODUCTION

1.      Defendant Kaplan provides educational services to individuals of all ages with postsecondary education, test preparation, professional training and K12 services.[1] With approximately 400 locations in 25 countries and over 21,000 employees worldwide, Defendant Kaplan is the largest division of its parent, Graham Holdings Company.[2]

2.      Defendants KHE and Kaplan University provide educational services to students and individuals who may not be well served by traditional postsecondary educational institutions.[3] The majority of the 40,000+ online and campus-based students are adult learners with families and students who work while pursuing higher education.[4] Defendant Kaplan University is a "part of" Defendant KHE, which is a subsidiary of defendant Kaplan, Inc., a subsidiary of Graham Holdings

---

[1] *See* Kaplan, Inc.'s website: http://www.kaplan.com/about-kaplan/company-overview (last visited February 13, 2015).

[2] *Id.*, at: http://www.kaplan.com/about-kaplan/global-operations (last visited February 13, 2015).

[3] *See* Kaplan University's website: http://www.kaplanuniversity.edu/about/annual-report.aspx (last visited February 13, 2015).

[4] *Id.*, at: http://www.kaplanuniversity.edu/about/annual-report.aspx (last visited February 13, 2015).

Company.[5]

3.      Unfortunately for consumers, in an attempt to promote their services, Defendants conducted (and continue to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiffs and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

5.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiffs file the instant lawsuit and seek an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together

---

[5] *Id.*, at: http://www.kaplanuniversity.edu/about/about-kaplan-university.aspx (last visited February 13, 2015).

with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

6.     Plaintiffs bring this class action against Defendants to secure redress because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiffs' and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

7.     Defendants made one or more unauthorized calls to Plaintiffs' cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiffs.

## PARTIES

8.     Plaintiff ROBERT G. OLVER is a natural person and citizen of Murphy, North Carolina.

9.     Plaintiff CANDIE L. SPADJINSKE is a natural person and citizen of Derry, New Hampshire.

10.     Plaintiff DESHA L. MAYS is a natural person and citizen of Chicago Heights, Illinois.

11.     Defendant KAPLAN, INC. ("Kaplan") is a corporation organized under the laws of the State of Delaware, and a wholly owned subsidiary of THE GRAHAM

HOLDINGS COMPANY. Defendant Kaplan maintains its registered principle place of business in Georgia at 1015 Windward Ridge Parkway, Alpharetta, GA 30005. Defendant Kaplan has appeared and answered in this case.

12.     Defendant KAPLAN HIGHER EDUCATION, LLC ("KHE") is a limited liability company organized under the laws of the State of Delaware.  KHE is a wholly-owned subsidiary of defendant Kaplan; and KHE's sole member is defendant Kaplan.  Defendant KHE maintains its registered principle place of business in Georgia at 1015 Windward Ridge Parkway, Alpharetta, GA 30005.  Defendant KHE has appeared and answered in this case.

13.     Defendant IOWA COLLEGE ACQUISITION, LLC d/b/a KAPLAN UNIVERSITY ("Kaplan University") is a limited liability company organized under the laws of the State of Delaware.  Kaplan University is a wholly-owned subsidiary of defendant Kaplan; and Kaplan University's sole member is defendant Kaplan. Defendant Kaplan University maintains its registered principle place of business in Georgia at 1015 Windward Ridge Parkway, Alpharetta, GA 30005.   Defendant Kaplan University has appeared and answered in this case.

14.     Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time

such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

16.     The Court has personal jurisdiction over Defendants because they are registered to conduct business in this District, they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Additionally, this Court has personal jurisdiction over Defendants because they maintain an office in this District.

17.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendants. Furthermore, the Plaintiffs Class consists of at least one hundred members.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct a significant amount of business transactions within this

District, maintain their principal offices in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

19.     Defendants are subject to general personal jurisdiction in this District because they have continuous and systematic contacts with this District and operate businesses headquartered in this District.  By residing in and operating a business in the State of Georgia, Defendants have purposefully invoked the protection of Georgia law, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

20.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

21.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax

machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

22.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.     Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

23.     As of October 16, 2013, unless the recipient has given prior express written consent,[6] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a

---

[6] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

telephone number or address at which that person or entity
may be contacted.

- Prohibits solicitations to residences that use an artificial voice
  or a recording.

- Prohibits any call or text made using automated telephone
  equipment or an artificial or prerecorded voice to a wireless
  device or cellular telephone.

- Prohibits any call made using automated telephone equipment
  or an artificial or prerecorded voice to an emergency line
  (e.g., "911"), a hospital emergency number, a physician's
  office, a hospital/health care facility/elderly room, a cellular
  telephone, or any service for which the recipient is charged
  for the call.

- Prohibits autodialed calls that engage two or more lines of a
  multi-line business.
- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the National Do-Not-
  Call Registry

24.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an

autodialed or prerecorded message call is made to a wireless number bears the

responsibility for any violation of the Commission's rules."   *In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act, Declaratory*

*Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565,

¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748

(Dec. 31, 2012).

25.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

26.     Defendants provide educational services to individuals of all ages with postsecondary education, test preparation, professional training and K12 services. Unfortunately for consumers, Defendants utilized (and continued to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting their services.

27.     Defendants obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers and by capturing numbers used to call or submit web inquiries to Defendants.

28.     In Defendants' overzealous attempt to market their services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendants. Worse yet, Defendants placed (and continue to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry.  Consumers

place their phone numbers on the Do Not Call Registry for the express purpose of

avoiding unwanted telemarketing calls like those alleged here.

29.     Not surprisingly, these practices have led to significant backlash from

consumers:[7]

- "I received a call from Kaplin University, and I never even expressed interest in them!"[8]

- "9 calls a day !!! REALLY ??? QUIT CALLING ME !!"[9]

- "calls too many times a day and inconveniencing me while i'm at work. STOP THEM."[10]

- "…I have never requested information from this place and they still call me everyday."[11]

- "I DID NOT request any information from Kaplan University and they, apparently, are calling me. It seems that some places you put your phone number in online sells that info to other companies and Kaplan is one of them, it appears."[12]

---

[7] *See, e.g.*, whocallsme for 954-424-4700, http://whocallsme.com/Phone-Number.aspx/9544244700 (last visited February 11, 2015); 800notes for 954-424-4700, http://800notes.com/Phone.aspx/1-954-424-4700 (last visited February 11, 2015).
[8] whocallsme for 954-424-4700, http://whocallsme.com/Phone-Number.aspx/9544244700/2 (last visited February 11, 2015).
[9] 800notes for 954-424-4700, http://800notes.com/Phone.aspx/1-954-424-4700/2 (last visited February 11, 2015).
[10] whocallsme for 954-424-4700, http://whocallsme.com/Phone-Number.aspx/9544244700/2 (last visited February 11, 2015).
[11] 800notes for 954-424-4700, http://800notes.com/Phone.aspx/1-954-424-4700/2 (last visited February 11, 2015).
[12] 800notes for 954-424-4700, http://800notes.com/Phone.aspx/1-954-424-4700/2 (last visited February 11, 2015).

- "I kept getting this number, but when I answer it no one will talk to me? They call me all hours of the day and night!!!!!!!! Very frustrating!"[13]

30.     Defendants   knowingly   made   (and   continue   to   make)   these telemarketing calls without the prior express written consent of the call recipients and knowingly continue to call them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF ROBERT OLVER

31.     Over two years ago on or about October 5, 2012, Plaintiff Olver registered his cellular phone number ending in 1538 with the National Do Not Call Registry.

32.     Starting in or around January, 2015, Plaintiff Olver began receiving calls on his cellular telephone from the phone number (954) 424-4700.

33.     Plaintiff received all calls described above on his cellular telephone assigned a number ending in 1538.

---

[13]   800notes   for   954-424-4700,   http://800notes.com/Phone.aspx/1-954-424-4700/3   (last   visited February 11, 2015).

34.    Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior express written consent.

35.    Initially, Plaintiff Olver did not answer these calls. However, after the calls persisted, Plaintiff finally started answering them in order to determine their source. Oftentimes when Plaintiff Olver would pick up, the calls would automatically disconnect.

36.    Plaintiff Olver was able to answer at least six of these calls and interact with the caller's automated system and, on a single occasion, a live representative.

37.    Sometimes Plaintiff Olver was greeted by a pre-recorded message asking him to hold for an operator; and one time, Plaintiff Olver was ultimately greeted by a live operator.

38.    During each of the five calls where Defendants did not engage Plaintiff Olver, Plaintiff Olver could hear the call being routed, someone or some device received the routed call but did not engage Plaintiff Olver, and Plaintiff Olver could hear the sound of a call center in the background.

39.    Plaintiff Olver answered the call and, unlike previous calls, was ultimately engaged by a live representative.

40.     The representative told Plaintiff Olver he was calling on behalf of "Kaplan University" and proceeded to promote Defendants' online education programs.

41.     Plaintiff Olver explained to Defendants' representative his phone number was listed on the National Do Not Call Registry and he did not wish to receive any further calls from Defendants.

42.     Plaintiff Olver specifically asked Defendants' representative to remove his contact information and phone number from their database, and Defendants' representative agreed to comply.

43.     Approximately 20 minutes later, Plaintiff Olver received yet another call from Defendants despite his earlier request to be removed from their call list.

44.     Defendants continued to call Plaintiff Olver every day, including Sundays.

45.     Plaintiff Olver recognized Defendants' number as a telemarketer, and chose not to answer the phone after talking to Defendants' representative because Plaintiff Olver knew the purpose of the calls was to sell educational services he was not interested in purchasing.

46.     At the time of the calls, Plaintiff Olver did not have a business relationship with Defendants.

47.    Plaintiff Olver was annoyed by the calls and wanted Defendants to stop calling.

48.    It was obvious to Plaintiff Olver that Defendants were engaged in a marketing campaign wherein Defendants contact a large number of consumers using an autodialer.

49.    Plaintiff Olver has experience working in call centers wherein he used an autodialer to contact potential customers about insurance products.

50.    Based on the circumstances of the calls – including but not limited to the obvious sounds of call routing and a call center, and the failure of the call center representative to engage on several occasions – Plaintiff Olver believed Defendants' called his cellular telephone using an ATDS that automatically selected his number from a computer database.

51.    On information and belief, Defendants' ATDS called Plaintiff Olver on every occasion.

52.    On information and belief, and based on the circumstances of the all the calls, Defendants called Plaintiff Olver using an ATDS.

53.    Plaintiff Olver understood the purpose of Defendants' calls was to solicit business from Plaintiffs.

54.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

55.     Plaintiff Olver is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 1538.

56.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

57.     Plaintiff Olver did not provide Defendants with prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

58.     All calls Defendants made to Plaintiff Olver violate 47 U.S.C. § 227(b)(1).

## FACTS SPECIFIC TO PLAINTIFF CANDIE SPADJINSKE

59.     Starting in or around June, 2015, Plaintiff Spadjinske began receiving four to five calls per day on her cellular telephone from the phone number (954) 424-4700.

60.     Plaintiff received all calls described above on her cellular telephone assigned a number ending in 8175.

61.     Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior express written consent.

62.     Similar to Plaintiff Olver's experience, the calls Defendants made to Plaintiff Spadjinske varied in nature – sometimes Plaintiff Spadjinske heard only silence on the other end of the line; sometimes she was greeted by a pre-recorded, automated voice; and sometimes Plaintiff Spadjinske spoke with a live representative.

63.     On the occasions wherein Plaintiff Spadjinske spoke with a live representative, she could hear background noise she associated with a call center.

64.     Plaintiff Spadjinske would always experience a moment of silent "dead air" on the other end of the line before a live representative engaged her.

65.     Defendants' representative called for the purpose of recruiting Plaintiff Spadjinske as a student in Defendants' online education programs.

66.     Plaintiff Spadjinske told Defendants' representatives she was not interested in Defendants' products.  In fact, Plaintiff Spadjinske was a student at a competing online college at the time Defendant called her.

67.    Plaintiff Spadjinske specifically asked Defendants' representative to remove her contact information and phone number from their database and to stop calling her.

68.    At the time of the calls, Plaintiff Spadjinske did not have a business relationship with Defendants.

69.    Plaintiff Spadjinske was upset about the intrusive calls and repeated calls, so she tried to block the number with her phone software.

70.    It was obvious to Plaintiff Spadjinske that Defendants were engaged in a marketing campaign wherein Defendants contact a large number of consumers using an autodialer.

71.    Based on the circumstances of the calls – including but not limited to the obvious sounds of call routing and a call center, and the failure of the call center representative to engage on several occasions – Plaintiff Spadjinske believed Defendants called her cellular telephone using an ATDS that automatically selected her number from a computer database.

72.    On information and belief, Defendants' ATDS called Plaintiff Spadjinske on every occasion.

73.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

74.     Plaintiff Spadjinske is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8175.

75.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

76.     Plaintiff Spadjinske did not provide Defendants with prior express written consent to receive calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

## FACTS SPECIFIC TO PLAINTIFF DESHA MAYS

77.     During May, 2015, Plaintiff Mays began receiving four to five calls per day on her cellular telephone from the phone number (954) 424-4700.

78.     Plaintiff received all calls described above on her cellular telephone assigned a number ending in 8251.

79.     Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior express written consent.

80.    On the occasions wherein Plaintiff Mays spoke with a live representative, she could hear background noise she associated with a call center.

81.    Plaintiff Mays would always experience a moment of silence on the other end of the line before a live representative engaged her.

82.    As with Plaintiffs Olver and Spadjinske, Defendants' representative called for the purpose of recruiting Plaintiff Mays as a student in Defendants' online education programs.

83.    Plaintiff Mays told Defendants' representatives she never requested any information from Defendants and demanded they stop calling her.

84.    Defendants continued to call Plaintiff Mays despite her reasonable request.

85.    At the time of the calls, Plaintiff Mays did not have a business relationship with Defendants.

86.    Plaintiff Mays was upset about the intrusive calls and repeated calls.

87.    Plaintiff Mays knew Defendants were engaged in a marketing campaign wherein Defendants contact a large number of consumers using an autodialer because they continued to call her even though she requested to be removed from Defendants' call list.

88.     Based on the circumstances of the calls – including but not limited to the obvious sounds of call routing and a call center, and the fact that she continued to receive calls after she requested removal from Defendants' call list, Plaintiff Mays believed Defendants called her cellular telephone using an ATDS that automatically selected her number from a computer database.

89.     On information and belief, Defendants' ATDS called Plaintiff Mays on every occasion.

90.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

91.     Plaintiff Mays is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8251.

92.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

93.     Plaintiff Mays did not provide Defendants with prior express written consent to receive calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

94.     All calls Defendants made to Plaintiff Mays violate 47 U.S.C. §
227(b)(1).

95.     Plaintiffs have reason to believe Defendants have called, and continue
to call, thousands of wireless telephone customers to market their products and
services.

96.     Plaintiffs' overriding interest is ensuring Defendants' cease all illegal
telemarketing practices and compensate all members of the Plaintiffs Class for
invading their privacy in the manner the TCPA was contemplated to prevent.

97.     In order to redress injuries caused by Defendants' violations of the
TCPA, Plaintiffs, on behalf of themselves and a class of similarly situated
individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits
certain unsolicited voice and text calls to cell phones.

98.     On behalf of the Plaintiffs Class, Plaintiffs seek an injunction requiring
Defendants to cease all wireless telemarketing and spam activities and an award of
statutory damages to the class members, together with costs and reasonable
attorneys' fees.

## CLASS ACTION ALLEGATIONS

### A.    CLASS ALLEGATIONS

99.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure

23(a), (b)(2), and (b)(3) on behalf of themselves and the following classes defined

as follows (the "Class"):

> **"Robocall Class":** All individuals in the United States who
> received a call made by or on behalf of Defendants to the
> individual's cellular telephone through the use of an automatic
> telephone dialing system, or pre-recorded voice, or any other
> device having the capacity to dial numbers without human
> intervention, from October 16, 2013 to the date the Class is
> certified, where Defendants' records fail to indicate prior express
> written consent from the recipient to make such call.

> **"DNC[14] Class":** All individuals in the United States who: (1)
> received more than one telephone call made by or on behalf of
> Defendants within a 12-month period; (2) to a telephone number
> that had been registered with the National Do Not Call Registry
> for at least 30 days; and (3) for whom Defendants have no record
> of consent to place such calls.

100.   The following individuals are excluded from the Class: (1) any Judge

or Magistrate presiding over this action and members of their families; (2)

Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any

entity in which Defendants or its parents have a controlling interest, and its current

or former employees, officers, and directors; (3) Plaintiffs' counsel and Defendants'

counsel; (4) persons who properly execute and file a timely request for exclusion

from the Class; (5) the legal representatives, successors or assigns of any such

---

[14] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47
U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

101.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

102.    Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

103.    Plaintiffs and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiffs and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of Plaintiffs and the Class members.

**B.    NUMEROSITY**

104.    The exact size of the Class is unknown and not available to Plaintiffs at this time, but it is clear individual joinder is impracticable.

105.    On information and belief, Defendants made telephone calls to

thousands of consumers who fall into the definition of the Class.  Members of the

Class can be easily identified through Defendants' records.

## C.     COMMONALITY AND PREDOMINANCE

106.    There are many questions of law and fact common to the claims of

Plaintiffs and the Class, and those questions predominate over any questions that

may affect individual members of the Class.

107.    Common questions for the Class include, but are not necessarily limited

to the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether Defendants systematically made telephone calls to
consumers who did not previously provide Defendants and/or
their agents with prior express written consent to receive such
phone calls after October 16, 2013;

(c)     Whether Defendants systematically made telephone calls to
consumers whose telephone numbers were registered with the
National Do Not Call Registry;

(d)     Whether members of the Class are entitled to treble damages
based on the willfulness of Defendants' conduct;

(e)     Whether Defendants systematically made telephone calls to
consumers after October 16, 2013 (other than calls made for
emergency purposes or made with the prior express written
consent of the called party) using any automatic dialing system
or pre-recorded voice to any telephone number assigned to a
cellular phone service; and

(f)     Whether Defendants and their agents should be enjoined from

engaging in such conduct in the future.

**D.   TYPICALITY**

108.   Plaintiffs' claims are typical of the claims of the other members of the Class.

109.   Plaintiffs and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiffs and the Class.

**E.   ADEQUATE REPRESENTATION**

110.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

111.   Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

**F.   POLICIES GENERALLY APPLICABLE TO THE CLASS**

112.   This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

113.   Defendants' practices challenged herein apply to and affect the Class

members uniformly, and Plaintiffs' challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

## G.   SUPERIORITY

114.   This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

115.   The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

116.   Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

117.   Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

118.   By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense

will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("Robocall Claim" On behalf of Plaintiffs and the Class)

119.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

120.    Defendants made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiffs' and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiffs and the Plaintiffs Class Members.

121.    Defendants made the calls without prior express written consent of the Plaintiffs and Plaintiffs Class Members.

122.    The foregoing acts and omissions of Defendants constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

123.    As a result of Defendants' violations of 47 U.S.C. § 227, *et. seq.*, Plaintiffs and the Plaintiffs Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

124.   Because Defendants had knowledge that Plaintiffs and the Plaintiffs Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and Plaintiffs Class Members.

125.   Plaintiffs and the Plaintiffs Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("DNC Claim" On behalf of Plaintiff Olver and the Class)

126.   Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

127.   47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

128.   The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)— provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

---

residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

129.   47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

130.   47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that

person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

131.   Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

132.   Defendants made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiffs and members of the Class never provided any form of consent to receive telephone calls from Defendants, and/or Defendants do not have a record of consent to place telemarketing calls to them.

133.   Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the

regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

134.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

135.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

136.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

137.    Plaintiffs are entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

## JURY DEMAND

138.    Plaintiffs, individually and on behalf of the Class, demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

(a)     An order certifying the Class as defined above, appointing Plaintiffs Olver as the representative of the Class, and appointing his counsel HUGHES ELLZEY, LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(c)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

(d)     An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(e)     Pre-judgment and post-judgment interest on monetary relief;

(f)     An award of reasonable attorneys' fees and court costs; and

(g)     All other and further relief as the Court deems necessary, just, and proper.

Dated:  July 13, 2015.


                                Respectfully Submitted,


                                */s/ Andrea S. Hirsch*
                                Andrea S. Hirsch
                                Gar Bar No. 666557
                                ahirsch@hermangerel.com
                                HERMAN GEREL, LLP
                                230 Peachtree Street NW, Suite 2260
                                Atlanta, Georgia 30303
                                Phone (404) 880-9500
                                Fax (404) 880-9605

Benjamin H. Crumley, Esq.
Florida Bar No. 18284
CRUMLEY & WOLFE, PA
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113

W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Admitted Pro Hac Vice)*

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

---

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

The undersigned counsel for Plaintiffs hereby certifies that the foregoing has been prepared in accordance with one of the font (Times New Roman) and point selections (14 pt) approved by the Court in Local Rule 5.1(B) and (C).

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey

## <u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Northern District of Georgia, Atlanta Division, on <u>July 13, 2015</u>, and will be served on all counsel of record who have consented to electronic notification *via* CM/ECF.

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
